IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:17-CV-590-D

| | | |
|---|---|---|
| REINALDO OLAVARRIA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| ROY COOPER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On May 19, 2018, the court granted Reinaldo Olavarria's ("Olavarria" or "plaintiff") application to proceed in forma pauperis, dismissed his complaint without prejudice, and granted Olaverria leave to file an amended complaint [D.E. 8]. On June 18, 2018, Olaverria, proceeding pro se, filed an amended complaint [D.E. 9]. On July 12, 2018, the clerk issued summonses [D.E. 11]. On July 24, 2018, the United States Marshal Service filed returns of service on all defendants [D.E. 13–21]. On September 5, 2018, defendants moved to dismiss the amended complaint [D.E. 33, 37]. On September 5 and 6, 2018, the court notified Olavarria about the motions, the consequences of failing to respond, and the response deadlines [D.E. 35, 44]. See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam). On September 10, 2018, Olavarria responded in opposition [D.E. 45]. As explained below, the court grants defendants' motions to dismiss.

I.

According to Olavarria, "[t]he purpose of this complaint is to address continued deprivations of civil rights. Because those deprivations are not limited to one arm/branch/department of North Carolina, the suit is against North Carolina as a whole, for the most part." Am. Compl. [D.E. 9] 1. Olavarria cites "XIV Amendment of the US Constitution, Section 2; Section 1981 of Title 42 (Equal

Rights Under the Law); 42 U.S.C. § 1981[;] 42 U.S.C. § 1983; 18 U.S.C. § 241; 18 U.S.C. § 242; 28 U.S.C. § 1443[;]" and "Article III § 2 which extends the jurisdiction to cases arising under the U.S. Constitution[]" as the legal bases for his claims. Id. at 10.[1]

Four of Olavarria's claims relate to several state-court proceedings, including "divorce proceedings, and in a separate additional processing in a child support case and alienation of affection case," along with an "Industrial Commission case [which] is currently before the commission." Id. at 6. Olavarria alleges that attorneys in the Industrial Commission case "did readily violate commission rules and orders[,]" and that an attorney in the divorce proceedings "filed motions knowing they were misrepresenting what the judge ordered." Id. at 7–8. When Olavarria attempted to bring these issues to the courts through motions, they were "not . . . ruled upon and/or ignored[,]" and in one case a "domestic violence petition was denied by Judge Lori Christian without a hearing, in violation of Due Process[.]" Id. at 7. Olavarria alleges that "missing motions and documents from the divorce proceedings[]" resulted in a "miscarriage of justice" and "orders not based on 'facts'." Id. at 7–8.

Olavarria also alleges that, in 2010, he was "falsely accuse[d] . . . of Child Abuse[,]" and that the charge continues to "show up on my criminal background check, although the charge was dismissed after trial, without leave." Id. at 8. Olavarria alleges that he "continue[s] to have to deal with the repercussions of" that charge, including an inability to volunteer at his children's school, and employment discrimination. Id. Finally, in a "corollary claim[,]" Olavarria alleges that he has "completed and submitted over 500 employment applications with the State of North Carolina and

---

[1] Sections 241 and 242 of Title 18 of the United States Code "provide no basis for civil liability." Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980) (per curiam); see Huston v. Slanina, No. 12 C 4582, 2012 WL 4464301, at *2 (N.D. Ill. Sept. 24, 2012) (unpublished) (collecting cases). Thus, the court dismisses any claim purportedly brought under those statutes.

2

local government entities in North Carolina[,]" but has only received eight interviews in ten years, "clearly show[ing] for years the pattern of open discrimination[.]" Id. Olavarria cites an interview "with Wake County Human services and I met the none-disabled [sic] white female whom the county ended up hiring." Id. at 8–9. Olavarria "believe[s] that it can be shown through the courts that the positions I applied for, as is commonly known in NC, were given prejudicially to persons that are at minimum not disabled." Id. at 9.

Olavarria names as defendants North Carolina Governor Roy Cooper, North Carolina Office of State Human Resources Director Barbara Gibson, former North Carolina Supreme Court Chief Justice Mark Martin, former North Carolina Industrial Commission Chair Charlton Allen, three attorneys with the North Carolina Department of Justice and an attorney for Wake County, and North Carolina Department of Health and Human Services Secretary Mandy Cohen. Id. at 1. Olavarria seeks monetary damages and declaratory relief. Id. at 9.

II.

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure tests subject-matter jurisdiction, which is the court's "statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted); see Holloway v. Pagan River Dockside Seafood, Inc., 669 F.3d 448, 453 (4th Cir. 2012); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 479–80 (4th Cir. 2005). A federal court "must determine that it has subject-matter jurisdiction over the case before it can pass on the merits of that case." Constantine, 411 F.3d at 479–80. As the party invoking federal jurisdiction, Olaverria bears the burden of establishing that this court has subject-matter jurisdiction in this action. See, e.g., Steel Co., 523 U.S. at 104; Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999); Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). In

considering a motion to dismiss for lack of subject-matter jurisdiction, the court may consider evidence outside the pleadings without converting the motion into one for summary judgment. See, e.g., Evans, 166 F.3d at 647. A court should grant a motion to dismiss pursuant to Rule 12(b)(1) "only if the material jurisdictional facts are not in dispute and the moving party is entitled to judgment as a matter of law." Id. (quotation omitted).

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 135 S. Ct. 2218 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's allegations must "nudge[ ] [his] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

The standard used to evaluate the sufficiency of a pleading is flexible, "and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (quotation omitted).

4

Erickson, however, does not "undermine [the] requirement that a pleading contain 'more than labels and conclusions.'" Giarratano, 521 F.3d at 304 n.5 (quoting Twombly, 550 U.S. at 555); see Iqbal, 556 U.S. at 677–83; Coleman, 626 F.3d at 190; Nemet Chevrolet Ltd., 591 F.3d at 255–56; Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009). Although a court must liberally construe a pro se plaintiff's allegations, it "cannot ignore a clear failure to allege facts" that set forth a cognizable claim. Johnson v. BAC Home Loans Servicing, LP, 867 F. Supp. 2d 766, 776 (E.D.N.C. 2011); see Giarratano, 521 F.3d at 304 n.5.

When evaluating a motion to dismiss for failure to state a claim upon which relief can be granted, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court may also consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity." Goines, 822 F.3d at 166. Additionally, a court may take judicial notice of public records without converting the motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201(d); Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

A.

As for Olavarria's claims alleging defects in state-court proceedings, federal district courts have "no authority to review final judgments of a state court in judicial proceedings." D.C. Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983); see Rooker v. Fid. Tr. Co., 263 U.S. 413, 415–16 (1923). The Rooker-Feldman doctrine prohibits a "party losing in state court . . . from seeking what in substance would be appellate review of the state judgment in a United States district court, based

5

on the losing party's claim that the state judgment itself violates the loser's federal rights." Johnson v. De Grandy, 512 U.S. 997, 1005–06 (1994); see Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005); Feldman, 460 U.S. at 476; Thana v. Bd. of License Comm'rs for Charles Cty., 827 F.3d 314, 318–20 (4th Cir. 2016); Washington v. Wilmore, 407 F.3d 274, 279–80 (4th Cir. 2005). The Rooker-Feldman doctrine reinforces the important principle that review of state court decisions must be made to the state appellate courts, and eventually to the Supreme Court, not by federal district courts or courts of appeal. See Johnson, 512 U.S. at 1005–06. It "preserves federalism by ensuring respect for the finality of state court judgments." Washington, 407 F.3d at 279. The doctrine encompasses "not only review of adjudications of the state's highest court, but also the decisions of its lower courts." Brown & Root, Inc. v. Breckenridge, 211 F.3d 194, 199 (4th Cir. 2000) (quotation omitted).

Rooker-Feldman is a "narrow doctrine." Lance v. Dennis, 546 U.S. 459, 464 (2006); Thana, 827 F.3d at 318–20. It applies only to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp., 544 U.S. at 284; see Skinner v. Switzer, 562 U.S. 521, 531–33 (2011); Thana, 827 F.3d at 318–20. For the doctrine to apply, the party seeking relief in federal court must be asking the federal court to "reverse or modify the state court decree." Adkins v. Rumsfeld, 464 F.3d 456, 464 (4th Cir. 2006) (quotation omitted); see Thana, 827 F.3d at 318–20. Accordingly, the court "examine[s] whether the state-court loser who files suit in federal district court seeks redress for an injury caused by the state-court decision itself. If [the state-court loser] is not challenging the state-court decision, the Rooker-Feldman doctrine does not apply." Davani v. Va. Dep't of Transp., 434 F.3d 712, 718 (4th Cir. 2006) (footnote omitted); see Thana, 827 F.3d at 318–20. "The Rooker-Feldman doctrine bars

6

consideration not only of issues actually presented to and decided by a state court, but also of constitutional claims that are inextricably intertwined with questions ruled upon by a state court, as when success on the federal claim depends upon a determination that the state court wrongly decided the issues before it." Plyler v. Moore, 129 F.3d 728, 731 (4th Cir. 1997) (quotations omitted); see Jordahl v. Democratic Party of Va., 122 F.3d 192, 199 (4th Cir. 1997). In addition, a party "may not escape the jurisdictional bar of Rooker-Feldman by merely refashioning its attack on the state court judgments as a [section] 1983 claim." Jordahl, 122 F.3d at 202.

Olavarria's allegations that the state courts have committed constitutional violations in ruling against him and mishandling his filings attack the validity of state-court proceedings. Moreover, to the extent that Olavarria's Industrial Commission case remains pending, the proper recourse for a party who believes that a state agency has ruled improperly or unfairly is to raise such errors on direct appeal in state court, and not to relitigate issues before a federal court. See, e.g., Pierson v. Ray, 386 U.S. 547, 554 (1967), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982). Thus, the court dismisses claims one through four.

B.

As for Olaverria's claim concerning an inaccurate criminal record, the claim fails. See Isham v. United States, 717 F. App'x 770, 772 (10th Cir. 2017) (unpublished); Parker v. Certified Profile, LLC, No. 7:14-CV-37-BO, 2014 WL 3534129, at *2 (E.D.N.C. July 16, 2014) (unpublished); Cosey v. Cowley Cty., Kan., No. 10-3174-SAC, 2010 WL 5089937, at *1–2 (D. Kan. Dec. 8, 2010) (unpublished). Thus, the court dismisses the claim.

C.

As for Olavarria's claim of discriminatory hiring practices, Title VII of the Civil Rights Act of 1964 ("Title VII") requires a person to exhaust his administrative remedies by filing a charge with

the Equal Employment Opportunity Commission ("EEOC") concerning the alleged discrimination before filing suit a suit against an employer in federal court. See 42 U.S.C. § 2000e-5(e)(1); Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009). The Americans with Disabilities Act ("ADA") incorporates the administrative enforcement provisions of Title VII, including the requirement that a person exhaust his administrative remedies by filing a charge with the EEOC concerning the alleged discrimination before filing suit in federal court. See 42 U.S.C. §§ 2000e-5(e)(1), 12117(a); Sydnor v. Fairfax Cty., 681 F.3d 591, 593 (4th Cir. 2012); Thiessen v. Stewart–Haas Racing, LLC, 311 F. Supp. 3d 739, 743 (E.D.N.C. 2018). Accordingly, a district court has subject-matter jurisdiction over an ADA claim only if the plaintiff exhausted administrative remedies by filing an EEOC charge concerning the alleged discrimination before filing suit. See, e.g., Jones, 551 F.3d at 300; Tagirova v. Elizabeth City State Univ., No. 2:16-CV-70-D, 2017 WL 4019516, at *1 (E.D.N.C. Sept. 11, 2017) (unpublished); Webb v. N.C. Dep't of Crime Control & Pub. Safety, 658 F. Supp. 2d 700, 707–09 (E.D.N.C. 2009).

Olavarria's complaint does not allege that he presented his Title VII claim to the EEOC before filing this action, and he did not attach a right-to-sue letter. See 42 U.S.C. § 2000e–5(f)(1). "[W]here '[n]either the complaint nor the amended complaint alleges' that the plaintiff has 'complied with these prerequisites,' the plaintiff has not 'properly invoked the court's jurisdiction under Title VII.'" Davis v. N.C. Dep't of Corr., 48 F.3d 134, 140 (4th Cir. 1995) (alteration in original) (quoting United Black Firefighters of Norfolk v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979)).[2]

---

[2] The federal circuit courts are split concerning whether Title VII's administrative exhaustion requirement is jurisdictional. See Davis v. Fort Bend Cty., 893 F.3d 300, 306–07 (5th Cir. 2018) (collecting cases), petition for cert. granted, No. 18-525 (U.S. Jan. 11, 2019). The Fourth Circuit treats the administrative exhaustion requirement as jurisdictional. See Jones, 551 F.3d at 300. Although the Supreme Court has not expressly addressed the issue, Supreme Court precedent supports the Fourth Circuit's view. See, e.g., Patchak v. Zinke, 138 S. Ct. 897, 905 (2018); John R.

8

Accordingly, the court dismisses the claim. Alternatively, Olavarria has not plausibly alleged a Title VII claim.

To the extent that Olavarria relies on section 1981 for his discrimination claim, section 1981 protects the right of individuals to make and enforce contracts without racial discrimination. See 42 U.S.C. § 1981. To establish such a claim, a plaintiff must prove purposeful race discrimination in the making, performance, modification, or termination of a contract, or that affects enjoyment of the benefits, privileges, terms or conditions of a contractual relationship. See 42 U.S.C. § 1981(b); Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 476–77, 479–80 (2006); Spriggs v. Diamond Auto Glass, 165 F.3d 1015, 1018 (4th Cir. 1999); Cooper v. Brunswick Cty. Sheriff's Dep't, 896 F. Supp. 2d 432, 443 n.5 (E.D.N.C. 2012), aff'd sub nomen Cooper v. Sheehan, 735 F.3d 153 (4th Cir. 2013). Olavarria does not plausibly allege a section 1981 claim. Thus, the court dismisses the claim.

III.

In sum, the court GRANTS defendants' motions to dismiss [D.E. 33, 37], and DISMISSES the action without prejudice. The clerk shall close the case.

SO ORDERED. This 18 day of April 2019.

JAMES C. DEVER III
United States District Judge

---

Sand & Gravel Co. v. United States, 552 U.S. 130, 133–34 (2008); Alexander v. Gardner-Denver Co., 415 U.S. 36, 47 (1974); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 798 (1973).

9